IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

JOHN E. MARBERRY PLAINTIFF

v. CIVIL NO. 3:10-CV-03015

MISHAEL J. ASTRUE, Commissioner
of Social Security Administration DEFENDANT

**MEMORANDUM OPINION**

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for Supplemental Security Income benefits (SSI) under Title XVI of the Social Security Act (Act), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

## I. Procedural Background:

Plaintiff filed for supplemental security income benefits alleging disability on June 21, 2005 (Tr. 84). As noted in the ALJ's decision, an individual may not qualify for disability benefits under SSI unless and until the individual applies for the benefit (Tr. 36); 20 C.F.R. § 416.335. Consequently, Plaintiff is not eligible for benefits as of his alleged onset of disability, May 10, 2004. The application was denied initially and on reconsideration and Plaintiff requested a hearing (Tr. 47, 53). A hearing was held on May 15, 2008, before an Administrative law judge (ALJ). (Tr. 7-26). On July 24, 2008, the ALJ issued a decision finding Plaintiff not

disabled (Tr. 33-46). On January 7, 2010, the Appeals Council found no basis to reverse the ALJ's decision (Tr. 1). Therefore, the ALJ's July 24, 2008 decision became the Commissioner's final administrative decision

## II. Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable

clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)©. A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

## III. Applicable Facts:

Plaintiff is a 36 year old man who graduated from high school and went on to receive a Bachelor of Science in Business Administration. (Tr. 12, 24) He has worked as a marketer, salesman, security guard, delivery driver, mill laborer, and auto salvage mechanic. (Tr. 107, 156-57).

On May 10, 2004, while employed at his last job he was lifting an automobile transmission out of a vehicle when he injured his back. (T. 12) He went to the Emergency Room at Northwest Arkansas Regional Medical Center (T. 227) x-rays were taken which showed a normal lumbar spine and normal dorsal spine. (T. 231) and he received a prescription for

Ibupropen 800mg, Flexeril 10mg and Vicodin 5/500. (T.230).

On May 12, 2004 the Plaintiff was seen by his treating physician, Dr. Leslie, who began to treat him for his for his back and elbow pain and continued to treat him through August 2004. (T. 213-218). On May 21, 2004 an MRI was performed which showed a desiccation (drying) of disc material at 5-1 and annular bulges at 5-1 and 4-5 but no herniated nucleus pulposus or spinal stenosis. (T. 219).

On August 21, 2004 the Plaintiff was a passenger in a motor vehicle that was rear ended by another vehicle and went to the North Arkansas Regional Medical Center Emergency Room complaining of elbow and neck pain. (T. 221-222). The Physician's Report shows that the x-rays were all negative and the Plaintiff had no rediculopatihic[1] pain.

On September 28, 2004 the Plaintiff did present to the North Arkansas Regional Medical Center Emergency Room complaining of low back pain. He was administered some pain medication and discharged. (T. 234-235).

On June 21, 2005 Plaintiff filed for supplemental security income benefits alleging disability on May 10, 2004 (Tr. 84) as a result of lifting a heavy object on that day. (T. 97).

On August 24, 2005, Plaintiff underwent consultative examination with Shannon Brownfield, M.D. (Tr. 237-243). Dr. Brownfield noted Plaintiff did not take prescription pain medication for his alleged back pain. Plaintiff exhibited normal range of motion of the cervical spine and normal lumbar flexion, but reported pain on flexion (Tr. 240). Straight leg raising testing was negative on the right and positive on the left (Tr. 240). Plaintiff's reflexes were

[1]Radiculopathy is a condition due to a compressed nerve in the spine that can cause pain, numbness, tingling, or weakness along the course of the nerve. See www.medicinenet.com.

characterized as essentially normal (Tr. 241). Plaintiff exhibited some muscle weakness in the left thigh and left foot, but no muscle atrophy. Plaintiff's sensation was decreased relative to his L4-5 disk on the left lower extremity (Tr. 241). Dr. Brownfield found Plaintiff experienced lower back pain with radiculopathy at L4-5 "probably due to disk herniation and limited stooping and lifting hernations," and he noted that Plaintiff alleged soreness on prolonged walking, sitting, standing (Tr. 243).

On September 1, 2005 Kimberly Adametz, M.D., reviewed Plaintiff's physical medical records and opined that Plaintiff retrained the capacity to sit about six hours and stand six hours in an eight hour day and that he could lift 20 pounds occasionally and 10 pounds frequently, (Tr. 244-245). Dr. Adametz opined Plaintiff could only occasionally stoop or crouch. Rana Mauldin, M.D., subsequently affirmed Dr. Adametz's findings on November 22, 2005 (Tr. 251).

On December 5, 2005 a Psychiatric Review Technique was performed by Dr. G. Sutton. (T. 252-264). No functional limitations were noted (T. 262) and the doctor noted the Plaintiff's daily living activities and that his physical examination of August 25, 2005 did not note any psychiatric impairment. (T. 264).

On July 10, 2006 Plaintiff underwent lumbar myelogram, and post myelogram CT. Xrays revealed normal vertebral body heights and alignment. Fluoroscopy demonstrated no effacement of the nerve root sleeves (Tr. 287). CT demonstrated mild disk bulge with mild circumferential thecal sac effacement at L2-3 and L4-5 with no significant canal stenosis at L3-4 (Tr. 287). L5-S1 findings revealed a disk bulge and facet hypertrophy with no significant spinal canal stenosis and no marked canal spinal or neural foraminal stenosis (Tr. 287). There was no evidence of mental problems (Tr 292).

On August 29, 2006 the Plaintiff began to see Dr. Jeff Woodward at the Springfield Neurological &Spine Center who treated the Plaintiff until October 17, 2006. (T. 289-300).

On November 29, 2007 the Plaintiff was seen by Dr. Vann Smith for a Neuropsychodiagnostic Evaluation. (T. 267-275).

On February 26, 2008 the Plaintiff was seen by Stephen Harris for a Mental Diagnostic Evaluation, Intellectual Assessment and a Neuropsychological Battery. (T. 276-285).

## IV. Discussion:

The ALJ found that the Plaintiff's back impairment and organic mental disorder were severe , but not of listing level severity, that the Plaintiff's subjective complaints were not fully credible and that his RFC precluded his past relevant work, but a vocational expert's (VE) testimony in response to a hypothetical showed that the Plaintiff could perform other jobs existing in substantial numbers. (T. 38-46).

The Plaintiff contends that the ALJ failed to develop the record by not sending the Plaintiff for a consultive orthopedic or neurological exam (ECF No. 8, p. 13) and that the ALJ's RFC determination was not supported by substantial evidence. (Id., p. 16). Neither claim has merit.

### A. Development of the Record.

The Plaintiff's first contention is that the ALJ failed to develop the record by not sending the Plaintiff for a consultive orthopedic or neurological exam.

In the present case the medical records of the Plaintiff were very sparse. After his injury date of May 10, 2004 the Plaintiff went to the Emergency Room at Northwest Arkansas Regional Medical Center (T. 227) where x-rays were taken which showed a normal lumbar spine

and normal dorsal spine. (T. 231). He received a prescription for Ibupropen 800mg, Flexeril[2] 10mg and Vicodin[3] 5/500. (T.230). The Plaintiff began to treat with his private physician, Dr. Thomas Leslie, and continued to see him through August 2004. (T. 213-218). At Dr. Leslie's direction an MRI was performed and read by Dr. Morris on May 21, 2004. The MRI showed that there was desiccation (drying) of disc material at 5-1 indicating early degenerative change and annular bulges at 5-1 and 4-5 but no "herniated nucleus pulposus[4] or spinal stenosis." (T. 219).

The Plaintiff was a passenger in a motor vehicle accident on August 21, 2004 and, while he was diagnosed with cervical strain, he reported no radiculopathic pain. His cervical spine was x-rayed and read again by Dr. Morris and found to be normal. (T. 225). He was prescribed Ibuprofen and discharged. (T.223).

A consultive examination was performed by Dr. Shannon Brownfield, M.D. (T. 237-243) on August 24, 2005 shortly after Plaintiff made his application for benefits. A Physical Residual Funcitioal Capacity Assessment was performed by Dr. Adametz Kimberly on September 1, 2005 and reviewed by Dr. Rana Mauldin on November 25, 2005. (T. 244-251).

On July 10, 2006 Plaintiff underwent lumbar myelogram, and post myelogram CT. Xrays revealed normal vertebral body heights and alignment. Fluoroscopy demonstrated no effacement of the nerve root sleeves (Tr. 287). CT demonstrated mild disk bulge with mild circumferential thecal sac effacement at L2-3 and L4-5 with no significant canal stenosis at L3-4

---

[2]Flexeril (cyclobenzaprine) is a muscle relaxant. See www.drugs.com

[3]Vicodin is a tablet containing a combination of acetaminophen and hydrocodone. Vicodin is used to relieve moderate to severe pain. See www.drugs.com.

[4]A herniated nucleus pulposus is a slipped disk along the spinal cord. The condition occurs when all or part of the soft center of a spinal disk is forced through a weakened part of the disk

(Tr. 287). L5-S1 findings revealed a disk bulge and facet hypertrophy with no significant spinal canal stenosis and no marked canal spinal or neural foraminal stenosis (Tr. 287). There was no evidence of mental problems (Tr 292).

After the Plaintiff obtained a Neuropsychodiagnostices Examination by Dr. V. Smith on November 29, 2007 the Commission ordered a Mental Diagnotic Evaluation and Intellectual Assessment as well as a Neuropsychological Battery which was performed by Dr. Stephen Harris on February 26, 2008. (T. 276-279).

The ALJ has a duty to fully and fairly develop the record. *See Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995)(ALJ must fully and fairly develop the record so that a just determination of disability may be made). The ALJ is not required to act as Plaintiff's counsel. *See Clark v. Shalala*, 28 F.3d 828, 830 (8th Cir. 1994) (ALJ not required to function as claimant's substitute counsel, but only to develop a reasonably complete record); *see also Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995) ("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial").

The court cannot say that the development of the record in this case was unfair to the Plaintiff. There was no objective evidence which would have required an orthopedic exam. The last lumbar myelogram performed in July 2008 showed "Mild lumbar spondylosis" and "No marked spinal canal or neural foraminal stenosis." (T. 288). The ALJ is permitted to issue a decision without ordering additional evidence if the record before him is sufficient to reach a conclusion. *Matthews v. Bowen*, 879 F.2d 422, 424 (8th Cir. 1989). Any further examinations ordered by the ALJ would have been speculative at best.

**B. RFC Assessment.**

The Plaintiff next contends that the ALJ's RFC assessment is not supported by substantial evidence. (ECF No. 8, p. 16).

The ALJ determined that plaintiff retained the RFC to "perform sedentary work as defined in 20 CFR 416.967(a) except that while the claimant can frequently lift and/or carry less than ten pounds, and occasionally ten pounds, push and/or pull within the limits for lifting and carrying, sit (with normal breaks) for a total of six hours in an eight hour work day, and stand and/or walk (with normal breaks) for a total of at least two hours in an eight hour work day, he cannot climb ladders or scaffold and he cannot craw. He can occasionally climb stairs and ramps, balance, stoop, crouch, and kneel. The claimant is mildly limited in the ability to understand, remember, carry out, and make judgments on complex work-related instruction, and in the ability to respond appropriately to usual work situations and routine work changes. Mildly limited means there is some slight limitation, but the claimant can generally perform well." (T. 40).

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. *Id*. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical

evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

**1. Back Injury**

**a. Objective Evaluations**

The MRI taken of the Plaintiff's spine on May 21, 2004 showed a desiccation (drying) of disc material at 5-1 and annular bulges at 5-1 and 4-5 but no herniated nucleus pulposus or spinal stenosis. (T. 219). Although the Plaintiff complained to Dr. Leslie from May to August 09, 2004 about substantial back pain (T. 213-218) when the Plaintiff was seen in the emergency room of North Arkansas Regional Medical Center on August 21, 2004 as a result of a motor vehicle accident he indicated that he did not have any radiculopathic pain. (T. 220).

On August 24, 2005, Plaintiff underwent consultative examination with Shannon Brownfield, M.D. (Tr. 237-243). Dr. Brownfield noted Plaintiff did not take prescription pain medication for his alleged back pain. Plaintiff exhibited normal range of motion of the cervical spine and normal lumbar flexion, but reported pain on flexion (Tr. 240). Straight leg raising testing was negative on the right and positive on the left (Tr. 240). Plaintiff's reflexes were characterized as essentially normal (Tr. 241). Plaintiff exhibited some muscle weakness in the left thigh and left foot, but no muscle atrophy. Plaintiff's sensation was decreased relative to his L4-5 disk on the left lower extremity (Tr. 241). Dr. Brownfield found Plaintiff experienced lower back pain with radiculopathy at L4-5 "probably due to disk and limited stooping and lifting hernations," and he noted that Plaintiff alleged soreness on prolonged walking, sitting, standing (Tr. 243). It does not appear that Dr. Brownfield examined the MRI performed on the Plaintiff on May 21, 2004.

On September 1, 2005 Kimberly Adametz, M.D., reviewed Plaintiff's physical medical records and opined that Plaintiff retrained the capacity to sit about six hours and stand six hours in an eight hour day and that he could lift 20 pounds occasionally and 10 pounds frequently, (Tr. 244-245). Dr. Adametz opined Plaintiff could only occasionally stoop or crouch. Rana Mauldin, M.D., subsequently affirmed Dr. Adametz's findings on November 22, 2005 (Tr. 251).

Dr. Adametz's opinion is confirmed by the Plaintiff's subsequent treatment at the Springfield Neurological & Spine Institute. On July 10, 2006 Plaintiff underwent lumbar myelogram, and post myelogram CT. Xrays revealed normal vertebral body heights and alignment. Fluoroscopy demonstrated no effacement of the nerve root sleeves (Tr. 287). CT demonstrated mild disk bulge with mild circumferential thecal sac effacement at L2-3 and L4-5 with no significant canal stenosis at L3-4 (Tr. 287). L5-S1 findings revealed a disk bulge and facet hypertrophy with no significant spinal canal stenosis and no marked canal spinal or neural foraminal stenosis (Tr. 287).

Dr. Woodward initiated a plan of physical therapy and on September 28, 2006 his notes indicate that the Plaintiff "reports he is doing much better since starting physical therapy". The Plaintiff had attended six sessions and he complained only of "occasional tingling in the left lower extremity down posterior of thigh to calf" and that his "leg pain had decreased significantly". (T. 297) Dr. Woodward ordered a TENS unit and to continue current PT and home spine exercises. (T. 298). When the Plaintiff saw Dr. Woodward again on October 17, 2006 he stated that he had no leg pain or numbness. Denied any lower extremity weakness and that the physical therapy offered significant relief. (T. 299). Dr. Woodward's opinion was that the Plaintiff had reached maximum medical improvement and that no additional medical

treatment was necessary. (T. 300). On November 10, 2006 Dr. Woodward listed a permanent partial impairment/disability rating of 6% at the 400 week level for the work-related condition. (T. 286).

The only diagnosis of any significance is facet hypertrophy but there was no significant spinal canal stenosis and no marked canal spinal or neural foraminal stenosis (Tr. 287). A diagnosis is not per se disabling. *See Trenary v. Bowen*, 898 F.2d 1361, 1365 (8th Cir.1990) (holding that the ALJ properly considered the evidence regarding the functional limitations imposed by plaintiff's impairments, not the diagnoses). Instead, an ALJ must make a disability determination regarding the degree of disability based on the functional limitations, if any, that are caused by the impairment in question. *See id.*

It appears that the Plaintiff's condition responded to physical therapy and that factor was considered by the ALJ. *See Wildman v. Astrue*, 596 F.3d 959, 965 (8th Cir.2008) (noting when an impairment responds to treatment, that condition is not disabling).

**b. Subjective Complaints**

The Plaintiff consistently complained of pain since he was injured on May 10, 2004. (T. 213-218). An ALJ may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ is required to take into account the following factors in evaluating the credibility of a claimant's subjective complaints: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions. *See id.* The ALJ must make express credibility determinations and set forth the inconsistencies in the record

which cause him to reject the plaintiff's complaints. *Masterson v. Barnhart,* 363 F.3d 731, 738 (8th Cir.2004). However, the ALJ need not explicitly discuss each *Polaski* factor. *Strongson v. Barnhart,* 361 F.3d 1066, 1072 (8th Cir.2004). The ALJ only need acknowledge and consider those factors before discounting a claimant's subjective complaints. *Id.* In the present case, the ALJ failed to acknowledge or discuss the factors in his credibility assessment of plaintiff.

(1) Daily Activities

The Plaintiff complained that his daily activities were severely restricted. The ALJ noted that the Plaintiff testified that he was limited to lifting fifty pounds. (T. 42). The Plaintiff also indicated that he prepared his own meals (T. 117), drove a car, did his own shopping and went outside daily. (T. 118). Moreover, "acts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain." *Medhaug v. Astrue*, 578 F.3d 805. *Cf. Reed v. Barnhart*, 399 F.3d 917, 923-24 (8th Cir.2005)

While the Plaintiff contended his daily activities were severely limited Dr. Woodward treated the Plaintiff with physical therapy from July 2066 to November 2006, rated the Plaintiff's disability at 6% and, felt that the physical therapy had been very successful.

(2) Duration, Frequency and Intensity of Pain

Although the Plaintiff complained to Dr. Leslie from May to August 09, 2004 about substantial back pain (T. 213-218) when the Plaintiff was seen in the emergency room of North Arkansas Regional Medical Center on August 21, 2004 as a result of a motor vehicle accident he indicated that he did not have any radiculopathic pain. (T. 220).

There was no medical evidence which supported the Plaintiff's allegations of debilitating

pain. *See Dixon v. Sullivan*, 905 F.2d 237, 238 (8th Cir. 1990) (holding that medical evidence did not indicate a condition which could be expected to produce the level of pain alleged). The Plaintiff was at all times treated conservatively by his treating physicians and no physician recommended any surgical procedure. *See Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993) (holding that treating physician's conservative treatment was inconsistent with plaintiff's allegations of disabling pain). Therefore, although it is clear that plaintiff suffers from some degree of pain and discomfort, he has not established that he is unable to engage in any and all gainful activity. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir.2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability); *Woolf v. Shalala*, 3 F.3d at 1213 (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled).

(3) Dosage, effectiveness, and side effects of medication.

When the Plaintiff was seen by Dr. Brownfield on August 24, 2005 he stated that he was not taking any medication. (T. 237). When he was seen by Dr. Woodward on August 29, 2006 for his initial office visit there was no indication he was taking any medication (T. 290) and the only medication prescribed was Sonata 10mg to help him sleep. (T. 293). Again when the Plaintiff saw Dr. Harris on March 10, 2008 he was taking no prescription medication and used over the counter medication to control his pain. (T. 277). Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits. *See, e.g., Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir.2004); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir.1987); see also *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir.1983) (affirming a denial of benefits and noting that the claimant's impairments were responsive to medication).

*Warre v. Commissioner of Social Sec. Admin*. 439 F.3d 1001, 1006 (C.A.9 (Or.),2006)

(4) precipitating and aggravating factors

The precipitating factor for the Plaintiff's condition was the injury sustained on May 10, 2004 which has been discussed previously. Although the Plaintiff was involved in a motor vehicle accident shortly after his injury there is not evidence that it was an aggravating factor.

The plaintiff does not appear to have received treatment from August 2004 until after he applied for SSI benefits. In general, the failure to obtain follow-up treatment indicates that a person's condition may not be disabling or may not be as serious as alleged. *See Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir.1995) (holding "[g]iven his alleged pain, Shannon's failure to seek medical treatment may be inconsistent with a finding of disability"). The MRI taken of the Plaintiff's spine on May 21, 2004 which showed a desiccation (drying) of disc material at 5-1 and annular bulges at 5-1 and 4-5 but no herniated nucleus pulposus or spinal stenosis. (T. 219).

(5) functional restrictions.

The Plaintiff testified that he could lift up to fifty pounds. The Plaintiff sought no treatment between August 9, 2004 and June 10, 2006. In general, the failure to obtain follow-up treatment indicates that a person's condition may not be disabling or may not be as serious as alleged. *See Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir.1995) (holding "[g]iven his alleged pain, Shannon's failure to seek medical treatment may be inconsistent with a finding of disability"). There is no evidence that the Plaintiff sought low income treatment. *See Murphy v. Sullivan*, 953 F.2d 383, 386-87 (8th Cir.1992) (rejecting claim of financial hardship where there was no evidence that claimant attempted to obtain low cost medical treatment or that claimant had been denied care because of her poverty). The Plaintiff also testified that he purchased a two-

story home with his work-mans compensation award (T. 24). The decision to force himself to climb stairs on a daily basis is inconsistent with the functional restrictions the Plaintiff claims he suffers.

Therefore, although it is clear that plaintiff suffers from some degree of pain and discomfort, he has not established that he is unable to engage in any and all gainful activity. See *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir.2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability); *Woolf v. Shalala*, 3 F.3d at 1213 (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled). It is clear that the ALJ fully considered the *Polaski* factors and properly found that the Plaintiff's subjective complaints of debilitating pain were not credible.

**2. Mental Impairment**

The Plaintiff contends that the ALJ failed to adequately consider the MRFC provided by Dr. Smith and the opinion of Dr. Harris which indicated that psychological factors are altering Plaintiff's perception of pain. (ECF No. 8, p. 20).

The Plaintiff did not allege any mental impairment when he filed his initial application for SSI benefits. (T. 97). The fact that the plaintiff did not allege mental impairment as a basis for his disability in his application for disability benefits is significant, even if the evidence of mental impairment was later developed. See *Smith v. Shalala*, 987 F.2d 1371, 1375 (8th Cir.1993); *Dunahoo v. Apfel*, 241, F. 3d 1033, 1039 (8th Cir. 2001). The Plaintiff did not allege depression until a subsequent undated Disability Report. (T. 127). During the time that the Plaintiff was being treated by Dr. Woodward (July 2006 to November 2006) the Plaintiff was

"oriented to time, place and person" and "no dysphoria, anxiety, or agitation" was noted. (T. 286-300).

On November 29, 2007 the Plaintiff was seen by Dr. Vann Smith for a Neuropsychodiagnostic Evaluation. (T. 267-275) After administering a series of neuropsychodiagnostic test Dr. Smith diagnosed the Plaintiff with cognitive dysfunction related to the pain that the Plaintiff was suffering (T. 269) and rendered the opinion that the Plaintiff was "disabled at this time". (T. 268). The ALJ corrected noted that the determination of disability was for the Commission to decide not Dr. Smith. See *Flynn v. Chater*, 107 F.3d 617, 622 (8th Cir. 1997); 20 C.F.R. §§ 404.1527(e)(1) and 416.927(e)(1); SSR 96-5p (1996) ("opinions on issues reserved to the Commissioner are never entitled to controlling weight").

On February 26, 2008 the Plaintiff was seen by Stephen Harris for a Mental Diagnostic Evaluation, Intellectual Assessment and a Neuropsychological Battery. (T. 276-285). Dr. Harris concluded that Plaintiff experienced mild concentration difficulty due to a pain disorder associated with both psychological and general medical conditions (Tr. 278). Dr. Harris opined that Plaintiff experienced mild limits in his ability to understand, remember, and carry out complex instructions, to make complex work-related adjustments, and to respond appropriately to usual work situations and changes (Tr. 283-285). The ALJ adopted Dr. Harris's findings in his mental RFC finding (Tr. 40). The ALJ's discussion of Dr. Smith's report and the ALJ's determination to adopt the report and findings of Dr. Harris, is substantial evidence supporting the ALJ's RFC finding. It is the ALJ's responsibility at the hearing stage to weigh and resolve conflicts in evidence, and it was rationally possible for the ALJ to think the assessments of Dr. Smith inconsistent with much of the evidence in the record. *See Rodriguez v. Secretary of Health*

*and Human Services*, 647 F.2d 218 at 222.

The ALJ relied on the reports of Drs. Woodward, Brownfield, Adametz, and Mauldin in determining Plaintiff's RFC. The ALJ noted Plaintiff reported significant improvement with physical therapy, and that Plaintiff's testimony was inconsistent with the medical reports of Dr. Woodward (Tr. 40-44). As a treating physician Dr. Woodward's reports are entitled to more weight and the ALJ's reliance on them is consistent with Eighth Circuit case law. *Lawrence v. Chater*, 107 F.3d 674, 676 (8th Cir. 1997). The court also notes that Dr. Woodward was a Physiatrist. A Physiatrist is a physician specializing in physical medicine and rehabilitation who has been certified by the American Board of Physical Medicine and Rehabilitation after completing residency and other requirements. *See Mosby's Medical Dictionary*, 8th edition. (c) 2009, Elsevier. Opinions of specialists on issues within their areas of expertise are "generally" entitled to more weight than the opinions of non-specialists. See 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5). *Guilliams v. Barnhart* 393 F.3d 798, 803 (C.A.8 (Mo.),2005), 20 C.F.R. § 404.1527

The ALJ concluded that Plaintiff's physical RFC was in the middle ground, relying partially on the reports of all the doctors and finding Plaintiff was more limited in his RFC than Drs. Adametz and Mauldin suggested. The ALJ found Plaintiff limited to only sedentary work activity, lifting no more than 10 pounds, even though Plaintiff testified his doctors told him he could lift 50 pounds (Tr. 18, 40-44). The ALJ found Plaintiff retained the physical RFC to perform sedentary work with no climbing of ladders or scaffolds, and no crouching (Tr. 40). The ALJ further limited Plaintiff to only occasional use of stairs and ramps, occasional balancing, stooping, crouching, and kneeling (Tr. 40). The court finds the ALJ's RFC determinations to be

supported by substantial evidence.

**V. Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision, and thus the decision should be affirmed. The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

Dated this April 14, 2011.

/s/ J. Marschewski
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE